UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:07CV-364R

MARY ELLIOT                                                                                                    PLAINTIFF

v.

JEFFERSON PILOT FINANCIAL INSURANCE CO.                                         DEFENDANT

**MEMORANDUM OPINION**

      This matter comes before the Court on Plaintiff's Memorandum in Favor of Award and Motion for Judgment on the Merits (Docket #11). Defendant filed a response and its own Motion for Judgment on the Merits (Docket #13). This matter is now ripe for adjudication. For the reasons that follow, the denial of benefits is AFFIRMED.

**BACKGROUND**

      Plaintiff is a former employee of Citizens Financial Corporation ("Citizens"). As such, Plaintiff was eligible to participate in a group plan of insurance issued and administered by Jefferson Pilot.

      The plan of insurance (the "Plan") provided, among other things, group short-term disability ("STD") insurance benefits under insurance policy number 010032713 ("STD Policy") purchased by Citizens from Jefferson Pilot. The STD Policy provides disability benefits in the event that the participant is totally or partially disabled, as those terms are defined by the STD Policy, from his or her own occupation. A participant is considered totally disabled when the participant, due to injury or sickness, is "unable to perform each of the main duties of his or her regular occupation."

      The Plan also provided long-term disability ("LTD") coverage under policy number

010032714 ("LTD Policy"). The LTD Policy also provided disability benefits in the event that the participant is totally or partially disabled from his or her occupation. A participant is considered totally disabled when, during the Elimination Period and Own Occupation Period, the participant, due to injury or sickness, is "unable to perform each of the main duties of his or her regular occupation." The Elimination Period is defined in the LTD Policy as 90 days of disability due to the same related sickness or injury which must be accumulated within a 180 day period. The Own Occupation Period is the period beginning a the end of the Elimination Period and ending 24 months later.

Both policies grant Jefferson Pilot "sole authority to manage this Policy, to administer claims, to interpret Policy provisions, and to resolve questions arising under this Policy." Jefferson Pilot's authority includes, but is not limited to, the right to "determine Employees' eligibility for insurance and entitlement to benefits." Any decision Jefferson Pilot "makes in the exercise of its authority shall be conclusive and binding."

Plaintiff began her employment at Citizens on April 18, 1994. Her last day of work at Citizens was October 28, 2004, at which time she stopped working due to an alleged disability. According to Plaintiff, her disability was due to a sickness which she described as "rheumatoid arthritis, lupus, fatigue." On October 29, 2004, Plaintiff submitted a claim for STD benefits to Jefferson Pilot.

On November 11, 2004, Jefferson Pilot notified Plaintiff that it had received her application for STD benefits and that it would review all relevant medical information to make a determination on Plaintiff's eligibility.

By letter dated December 23, 2004, Jefferson Pilot advised Plaintiff that, after reviewing an

attending physician's statement and office notes from three physicians, Plaintiff's claim was not payable. According to the attending physician's statement from Dr. Ceil Lanham, M.D., Plaintiff suffered from edema arthragias. However, all lab work was within normal levels and Plaintiff's physical exam showed that her lungs were clear and her heart rate was regular. Plaintiff had full rotation with her shoulders and hips. Dr. Lanham's statement indicated that Plaintiff "states she can only do job. Unable to do anything once home from work." Based on its review of this medical information, Jefferson Pilot determined that Plaintiff did not meet the requirements as stated in the Plan.

By letter dated January 28, 2005, Plaintiff notified Jefferson Pilot through her attorney, Michael P. Sullivan, that she wished to appeal the denial of STD benefits. Mr. Sullivan requested a copy of medical records and provisions of the Plan. Jefferson Pilot notified Sullivan on February 9, 2005 that it had received his letter requesting an appeal and included a copy of the information Sullivan had requested.

Following receipt of Plaintiff's request for an appeal, Jefferson Pilot sent Plaintiff's file to an independent physician for a peer review. In a memorandum dated August 22, 2005, Dr. Anthony C. Metcalfe, M.D., submitted the findings of his file review. The file consisted of two volumes with office visit reports, attorney's letters, laboratory investigations, operative reports, and various correspondences. Dr. Metcalfe acknowledged that Plaintiff had been diagnosed with systemic lupus erythematosus ("SLE"). Dr. Metcalfe noted that Plaintiff was managing "quite well" on medication. Plaintiff's main complaint at that time was fatigue with joint pain, with fatigue being the overwhelming symptom. Plaintiff complained of at least one or two hours of stiffness per day and felt the need to sleep ten to twelve hours a day in order to function in the morning.

3

Dr. Metcalfe summarized the records from Dr. Steven Stern, Plaintiff's physician, noting that Plaintiff complained often of fatigue and did not feel that she could continue working. Dr. Metcalfe also summarized the course of treatment for Plaintiff's SLE as well as her musculoskeletal examination in October 2004. Dr. Metcalfe noted that Plaintiff's shoulders were able to abduct to 90 degrees of full rotation, her hips had full flexion, and rotation in her knees were able to flex to 120 degrees with normal extension.

Dr. Metcalfe concluded that Plaintiff appeared to have become overwhelmed by the many stresses of her illness and felt unable to work as of October 28, 2004. He noted, however, that objectively "there appears to be insufficient evidence to support any restriction or limitation to prevent her from working in a sedentary occupation."

Subsequent to Dr. Metcalfe's initial file review, Jefferson Pilot received new information from Citizens, specifically, an employee job description. Upon receipt of this information, Dr. Metcalfe was asked to re-review his previous opinion regarding Plaintiff's work restrictions.

The forms sent by Citizens describe Plaintiff's title as "Group Administration Policy Issue Clerk." The physical requirements of this occupation involved manual assembly of pages, correlating, stapling, boxing, loading and unloading copy machines, packing and preparing policies for mailing, transportation of boxes of policies to the mail center, maintenance of vendor printing policy pages, reception of packing and stacking of printed pages from outside vendors, and filing all new issued policy enrollments. The position required continuous up and down movement, bending, stooping, and the ability to stand for thirty to forty-five minutes at a time, and to lift and move the box weight of thirty-five to forty pounds. Dr. Metcalfe determined that the description of Plaintiff's occupation falls into the medium work category.

After reviewing the new information, Plaintiff's file, and his original determination, Dr. Metcalfe opined that Plaintiff was restricted to sedentary and light duty because of her medical condition. He further stated that he believed Plaintiff was unable to meet the material duties in a medium work occupation.

By letter dated October 10, 2005, Jefferson Pilot notified Plaintiff through her attorney that, after reviewing Plaintiff's STD claim once more, Jefferson Pilot determined that benefits were payable. Jefferson Pilot further advised that its obligation to continue benefit payments was contingent upon satisfaction of the terms of the STD Policy. Jefferson Pilot noted that Plaintiff might be eligible for LTD benefits. Lastly, Jefferson Pilot requested that, if Plaintiff were awarded Social Security Disability benefits, the award letter be submitted.

On August 20, 2005, Jefferson Pilot notified Plaintiff that it was in receipt of Plaintiff's application for LTD benefits. Jefferson Pilot advised that it had completed its initial review of the application and that it would evaluate Plaintiff's capacity to perform work related activity comparing the physical requirements of her occupation to the restrictions and limitations resulting from the condition causing the disability.

As part of the investigation of Plaintiff's claim, Jefferson Pilot retained the services of GENEX Services, Inc. to conduct an occupational analysis. The purpose of the analysis was to conduct a study of the occupation of Group Administration Policy Issue Clerk. The physical requirements of that occupation, as it existed in the labor maker, were examined. The examiner utilized many resources to complete the research, including several national occupational guides and treatises. The examiner determined that the primary duties of Plaintiff's occupation included typing, filing records and reports, and posting information in records. The examiner concluded that, based

5

on the setting, telephone duties and mail sorting and distribution may also be included. The examiner stated that the major skills required included using eyes, hands, and fingers to operate a keyboard, performing repetitive tasks, following set or routine procedures, and to work with speed and accuracy. The examiner determined that other duties could include processing or recording new insurance policies or claims, reviewing and verifying data, transcribing data into a computer, or modifying, updating, and processing policies. Every research source used in the study classified the position as a sedentary (very light) occupation. The study determined that the occupation requires extensive sitting but with the possibility of standing/walking intermittently. The major physical demands were found to be handling, fingering, feeling, and reaching. It was determined that clerical perception and the ability to do precise work were the major aptitudes required of this occupation.

After receipt of this information, Jefferson Pilot asked Dr. Metcalfe to provide an addendum to clarify the re-review of his previous determination regarding the restrictions and limitations on Plaintiff's ability to work. Dr. Metcalfe reiterated that Plaintiff was capable of performing only sedentary or light duty because of her medical condition.

By letter dated November 8, 2005, Jefferson Pilot requested additional information from Dr. Stern. Jackson Pilot advised Dr. Stern that it was evaluating Plaintiff's ability to perform her occupation pursuant to the definitions and guidelines of the LTD Policy. Jefferson Pilot summarized its understanding of Plaintiff's diagnoses and medical conditions. Jefferson Pilot advised Dr. Stern that it believed that Plaintiff could perform at a sedentary to light work capacity. Jefferson Pilot asked Dr. Stern if he agreed and, if so, requested that he sign and date in the spaces provided. Dr. Stern circled the word "sedentary," crossing out the words "light work," and signed in the space provided. Dr. Stern also circled the word "sedentary" in a subsequent part of the letter that generally

defined the level of activity as "Sitting for 6 hours out of an 8-hour day and lifting no more than 10 lbs. occasionally."

By letter dated November 22, 2005, Jefferson Pilot notified Plaintiff that her claim for LTD benefits was denied. Jefferson Pilot referred to the Attending Physician Statement completed by Dr. Lanhem and correspondence from Dr. Stern dated July 26, 2005. Jefferson Pilot acknowledged that the documents revealed a diagnosis of SLE and complaints of fatigue and joint pain. Jefferson Pilot further advised that Dr. Metcalfe concluded that Plaintiff should have the ability to work in a sedentary occupation. Jefferson Pilot also informed Plaintiff that Dr. Stern had stated that Plaintiff had the capacity to do sedentary work.

Jefferson Pilot also explained that Plaintiff's occupation as a Group Administration Policy Issue Clerk is listed as being a sedentary functional demand occupation. Plaintiff was advised that, although Citizens described her job as a "medium work" job, the materials submitted established that Plaintiff's occupation was sedentary. Jefferson Pilot emphasized that the LTD Policy ensured Plaintiff's occupation, not her job. Jefferson Pilot advised Plaintiff of her appeal rights under ERISA. Plaintiff's right to brig a civil action was also explained.

On December 12, 2005, Plaintiff, by letter from her counsel, requested an appeal of the November 22 benefits decision. By letter dated January 12, 2006, Jefferson Pilot acknowledged receipt of the letter. Jefferson Pilot enclosed the complete copy of the policy and claim file. On June 12, 2006, Jefferson Pilot submitted certain medical records as additional evidence in Plaintiff's claim. By letter dated December 19, 2005, Plaintiff requested Jefferson Pilot to proceed to a decision.

On August 11, 2006 and August 22, 2006, Plaintiff sent correspondence to Jefferson Pilot,

7

attaching additional medical information. Jefferson Pilot acknowledged receipt of this information on September 1, 2006.

By letter dated September 26, 2006, Jefferson Pilot advised Plaintiff that it had completed its review of her appeal for LTD benefits. Jefferson Pilot stated that, based on the information provided, it had determined that benefits were not payable. Jefferson Pilot explained that the information in the record failed to support limitations and restrictions that would have prevented Plaintiff from performing her sedentary occupation of Policy Issue Clerk. Jefferson Pilot acknowledged that the record reviewed supported diagnoses of arthritis, lupus, and Sjogren's syndrom, and that Plaintiff had suffered from these conditions since 2002. Jefferson Pilot also recognized that Dr. Stern's records indicated that Plaintiff had complaints of left hip and knee pain, and that Plaintiff got relief from Ibuprofen and the use of a heating pad and had a good to excellent response from her medication. Jefferson Pilot noted that there were no physical findings that would support the inability to perform sedentary work. There were no imaging studies of the bones or joints in the claim file and the lab work for other conditions were negative. Jefferson Pilot advised Plaintiff that she had the right to appeal the decision. Jefferson Pilot also advised Plaintiff that she might be eligible to take advantage of dispute resolution options provided by ERISA.

By letter dated August 26, 2006, Plaintiff filed an appeal. Plaintiff submitted additional material on behalf of her claim on November 14, 2006 and November 26, 2006 and January 11, 2007.

On February 22, 2007, Jefferson Pilot referred Plaintiff's claim file to MES Solutions for an independent peer review. Alan Marks, M.D., a board-certified physician in internal medicine with a sub-specialty in rheumatology, reviewed Plaintiff's entire file in an effort to determine whether

Plaintiff was able to perform the duties of her occupation. Dr. Marks concluded, based on all of the medical information reviewed, that the following diagnoses were supported: psoriasis; hypertension; mild arthritis; autoimmune rheumatological syndrome, most consistent with Sjogren's syndrome; and fatigue, most likely related to Sjogren's syndrome. He concluded that the evidence did not support a diagnosis of psoriatic arthritis. Dr. Marks concluded that there were no impairments present that would translate into restrictions and limitations for Plaintiff. Plaintiff's arthritis was mild and her fatigue was a subjective symptom which did not raise to the level of impairment, restrictions, or limitations. Dr. Marks determined that the restrictions and limitations placed on Plaintiff's work activities by her attending physician were not reasonable nor consistent with the medical findings. Dr. Marks concluded that Plaintiff did not have functional impairment that would prevent performance of the essential tasks and duties of her sedentary occupation as of October 29, 2004, observing, "claimant is capable of sedentary work. As previously stated, there are no restrictions and limitations for this claimant. The information reviewed does not provide evidence that the claimant is unable to do sedentary work."

On March 2, 2006, Dr. Lanham opined that, at that point in time, Plaintiff would be unable to work more than an hour or so a day.

By letter dated March 15, 2007, Jefferson Pilot notified Plaintiff that it had obtained a peer review report from Dr. Marks. Jefferson Pilot invited Plaintiff or Plaintiff's treating physician to review and comment on the report.

On April 12, 2007, Plaintiff sent a letter to Jefferson Pilot, in which she enclosed a rebuttal statement from Dr. Lanham. In this rebuttal, Dr. Lanham stated that the diagnoses of autoimmune diseases are not made solely from the lab results. Dr. Lanham emphasized that fatigue factor should

not be minimized as it can be the most significant symptom of these diseases. Dr. Lanham opined that the combination of symptoms that Plaintiff was experiencing were significant, stating "They are all chronic, progressive and can be aggressive autoimmune diseases."

On April 17, 2007, Plaintiff forwarded a letter and additional medical records to Jefferson Pilot. These records included additional notes from Dr. Stern, Dr. Hodge, and Dr. Varghese.

On April 28, 2007, Plaintiff forwarded Jefferson Pilot a copy of the Notice of Award from the Social Security Administration ("SSA"). The documents forwarded demonstrated that, pursuant to the standards enacted and utilized by the SSA, Plaintiff was determined to be disabled.

On May 14, 2007, Jefferson Pilot notified Plaintiff that it had completed its review of Plaintiff's appeal of her most recent benefits denial. Based on all the information provided, the Appeals Council determined that benefits were not payable. Jefferson Pilot summarized the medical information submitted. Jefferson Pilot advised Plaintiff that all appeal rights available under the LTD Policy were exhausted. Jefferson Pilot advised Plaintiff that she had the right to pursue litigation.

On June 12, 2007, Plaintiff initiated this action in the Jefferson Circuit Court. On July 13, 2007, Jefferson Pilot removed the case to this Court.

## STANDARD

In *Wilkins v. Baptist Healthcare Systems, Inc.*, the Sixth Circuit held that § 502(a) actions were not subject to Federal Rule of Civil Procedure 56 motions. 150 F.3d 609, 617 (6th Cir. 1998). Instead, this Court must conduct a *de novo* review based on the administrative record; it must render findings of fact and conclusions of law, *id.* at 619, unless the benefit plan gives the administrator discretion to determine eligibility or construe the plan's terms, in which case an arbitrary and

capricious standard applies. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the Plan grants its administrators such discretion. The Plan provides Jefferson Pilot "sole authority to manage this Policy, to administer claims, to interpret Policy provisions, and to resolve questions arising under this Policy."

When applying an arbitrary and capricious standard of review, this Court must determine whether "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1071 (6th Cir. 1994) (citing *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). If such an explanation is available, this Court must respect the decision of the claims administrator and uphold it. *Id.* In evaluating those decisions, this Court must consider only the evidence before the administrator at the time. *Daniel v. Eaton Corp.*, 839 F.2d 263 266-67 (6th Cir. 1988).

## DISCUSSION

In determining whether a decision was arbitrary or capricious, the Court must account for potential conflicts of interest. *Kulkarni v. Metro. Life Ins. Co.*, 187 F. Supp. 2d 724, 727 (W.D. Ky. 2001) (citing *Bruch*, 489 U.S. at 115; *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998)). The Court must also factor in whether the plan administrator failed to give consideration to the SSA's determination that the that the applicant was totally disabled and whether the plan administrator based its decision to deny benefits on a file review as opposed to conducting a physical examination of the applicant. *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552-53 (6th Cir. 2008). "Such findings do not change our standard of review, but they do factor into our analysis when determining whether the administrator's decision was arbitrary or capricious." *Id.* at 553.

## I. CONFLICT OF INTEREST

"[T]here is an actual readily apparent conflict, nor a mere potential for one, when the company or plan administrator is the insurer that ultimately pays the benefits." *Gismondi v. United Technologies Corp.*, 408 F.3d 295, 299 (6th Cir. 2005) (quotation and citation omitted). However, the standard of review is not altered to a less deferential standard when the benefits administrator is operating under a conflict of interest, instead the standard remains unchanged and the conflict of interest is one factor to consider in applying that standard. *Smith v. Continental Cas. Co.*, 450 F.3d 253, 260 (6th Cir. 2006). "In considering such a conflict, there must be significant evidence in the record that the insurer was motivated by self-interest, and the plaintiff bears the burden to show that a significant conflict was present." *Id.*

Here, the only evidence that Plaintiff submits to demonstrate that Jefferson Pilot was motivated by self-interest was the fact that Jefferson Pilot was both the plan administrator and the insurer that ultimately pays benefits. This is not evidence of a significant conflict. Thus, this Court finds that Plaintiff did not develop the record to show that the conflict of interest contributed to an arbitrary and capricious determination by Jefferson Pilot.

## II. SOCIAL SECURITY BENEFITS

Plaintiff asserts that the SSA's determination that she was totally disabled must be considered in determining whether Jefferson Pilot's decision was arbitrary and capricious. Plaintiff states that the SSA decision alone should persuade this Court to find in her favor.

The Plan requires claimants to actively pursue "Other Income Benefits" which are defined to include benefits under the United States Social Security Act. If a claimant does not actively pursue such other income benefits, Plan benefits may be denied or suspended. Any other income

benefits that a claimant receives are subtracted from the amount of the monthly disability benefit received under the Plan.

Plaintiff notified Jefferson Pilot of the SSA's decision that Plaintiff was totally disabled on April 28, 2007. Jefferson Pilot issued its decision on Plaintiff's claim on May 14, 2007. Jefferson Pilot did not address the SSA's determination in its decision.

The SSA is required to give deference to the opinions of a claimant's treating physician. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 293 (6th Cir. 2005). In contrast, while ERISA plan administrators "may not arbitrarily reject or refuse to consider the opinions of a treating physician, the 'are not obligated to accord special deference to the opinions of treating physicians.'" *Id.* (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003)). Thus, the SSA's disability determination does not bind the plan administrator in reviewing a claim for benefits. *Id.* at 293-94.

This is not to say, however, that the SSA determination is meaningless and should be disregarded. In a situation such as this, "[i]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary or capricious." *Bennett,* 514 F.3d at 554 (citing *Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006).

Thus, this Court finds that Jefferson Pilot's silence as to the SSA's disability determination weighs in favor of finding that Jefferson Pilot failed to engage in a deliberate, principled reasoning process. *See id.*

**III.     FILE REVIEW**

Although there is nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination, "a plan's decision to conduct a file-only review -- especially where the right to conduct a physical examination is specifically reserved in the plan --may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Bennett*, 514 F.3d at 554 (quotations and citations omitted).

Pursuant to the Plan, Jefferson Pilot retained the right to have a claimant examined by "a Physician, specialist or vocational rehabilitation expert of the Company's choice, as often as reasonably required" at anytime while the claim is pending.  The Plan also provided Jefferson Pilot with the right to "deny or suspend benefits for an Insured Employee who fails to attend an exam, without good cause; or who fails to cooperate with the examiner."  Despite the fact that Jefferson Pilot had the option to physically examine Plaintiff, it chose to rely on file reviews.

Plaintiff has not disputed that her occupation was, as Jefferson Pilot concluded, a sedentary functional demand occupation.  Thus, Plaintiff's dispute centers on whether Jefferson Pilot's decision that Plaintiff could perform a sedentary occupations was arbitrary and capricious.

In making this determination, Jefferson Pilot reviewed Plaintiff's claim on five occasions. After Plaintiff presented a claim for STD benefits, Jefferson Pilot sent her claim file to Dr. Metcalfe for a peer review.  Dr. Metcalfe reviewed the file twice to evaluate whether Plaintiff was capable of performing the main duties of her occupation.  After Plaintiff presented her LTD claim, Jefferson Pilot conducted three reviews, twice at the appeals level.

When Plaintiff presented her initial claim for STD benefits, Jefferson Pilot received an attending physician's statement from Dr. Lanham stating that Plaintiff was capable of doing her job

14

but was unable to do anything once home from work. Jefferson Pilot subsequently denied Plaintiff's STD claim. After Plaintiff appealed the decision, Jefferson Pilot sent Plaintiff's file to Dr. Metcalfe for an independent peer review. Dr. Metcalfe acknowledged that Plaintiff had been diagnosed with SLE but that Plaintiff was managing quite well on medication. Dr. Metcalfe also noted Plaitniff's complaints of fatigue and joint pain. Dr. Metcalfe concluded that there was insufficient evidence to support any restriction or limitation to prevent Plaintiff from working in a sedentary occupation. Dr. Metcalfe then received an employee job description from Citizens. Dr. Metcalfe determined that the Citizen's form described an occupation which fell into the medium work category. Dr. Metcalfe opined that Plaintiff would be unable to meet the material duties in a medium work occupation. Based on Dr. Metcalfe's assessment, as well as the information provided by Citizens, Jefferson Pilot determined that Plaintiff's STD claim was payable.

Plaintiff then applied for LTD benefits. Jefferson Pilot obtained an occupational analysis which classified Plaintiff's occupation as a sedentary - very light - occupation. Jefferson Pilot then asked Dr. Metcalfe to provide an addendum to clarify the previous determination regarding the restrictions and limitations on Plaintiff's ability to do work. Dr. Metcalfe reiterated that Plaintiff was capable of performing only sedentary or light duty because of her medical condition. Jefferson Pilot subsequently contacted Dr. Stern, stating that it believed that Plaintiff could perform at a sedentary to light work capacity. Dr. Stern agreed that Plaintiff could perform at a sedentary occupation, which was defined by Jefferson Pilot as "Sitting for 6 hours out of an 8-hour day and lifting no more than 10 lbs. occasionally."

Jefferson Pilot then notified Plaintiff that her claim for LTD benefits was denied. Jefferson Pilot referred to the attending physician statement, the correspondence from Dr. Stern, and Dr.

15

Metcalfe's conclusions. Jefferson Pilot explained that Plaintiff's occupation was a sedentary functional demand occupation. Jefferson Pilot acknowledged that the documents revealed a diagnosis of SLE and complaints of fatigue and joint pain.

Plaintiff requested an appeal, submitting additional medical records as evidence of her claim. Jefferson Pilot submitted Plaintiff's claim file to Dr. Marks for an independent peer review. Dr. Marks concluded that, although several diagnoses were supported, there were no impairments present that would translate into restrictions and limitations for Plaintiff. Dr. Marks concluded that Plaintiff was capable of sedentary work. Contrary to Plaintiff's contention, Dr. Marks examined the effects of Plaintiff's symptoms alone and in combination. Jefferson Pilot determined that benefits were not payable based on the totality of information received and reviewed.

Although in some cases the decision to conduct a file-only review may raise questions about the thoroughness and accuracy of the benefits determination, *id.*, the record in this case demonstrates that Jefferson Pilot conducted a thorough and thoughtful review at each level of the benefits decision. Thus, this Court finds that Jefferson Pilot's decision to deny benefits based on a file review, as opposed to a physical examination, is not a factor indicating that Jefferson Pilot's decision was arbitrary and capricious. If the Court had a de novo review, it would reach a different conclusion. Nevertheless, under the applicable standard of review, the Court believes this decision is required.

## CONCLUSION

Although Jefferson Pilot's silence as the SSA disability determination weighs in favor of finding that Jefferson Pilot failed to engaged in a deliberate, principled reasoning process; this Court finds that the file reviews used in this case adequately explain why the reviewers reached

conclusions contrary to the SSA. The Court notes that Plaintiff's examining physician concluded that Plaintiff could work in a sedentary occupation as defined by Jefferson Pilot.

    For the foregoing reasons, the denial of benefits is AFFIRMED.

    An appropriate order shall issue.